Shauck, J.
It is said that the decision of the court below is justified by The State of Ohio v. Liffring, 61 Ohio St., 39, the act charged in the indictment not being an offense within the terms of the statute. The practice which was there charged as unlawful is the same as that charged in the present indictment. By the statute then in force one was regarded as practicing medicine who should “for a fee prescribe, direct, or recommend for the use of any person, any drug or medicine, or other agency for the treatment, cure, or relief of any wound, fracture, or bodily injury, infirmity, or disease.” The view then urged by the attorney-general was that the system of rubbing or kneading the body, known as osteopathy, is an “agency” within the meaning of the statute; but the interpretation of the statute seemed to invoke the maxim noseitur a sociis as an aid in determining the meaning of the word, and our conclusion was that it meant something of like character with a drug or medicine to be administered with a view to producing effects by virtue of its own potency; and that it, therefore, did not include osteopathy.
But since our decision in that case, by the act of April 14, 1900, the section (4403Í) has been amended and a more comprehensive definition given of the practice regulated, so that one is now regarded as practicing medicine within the meaning of the act *307 “who shall prescribe, or who shall recommend for a fee for like use, any drug or medicine, appliance, application, operation or treatment, of whatever nature, for the cure or relief of any wound, fracture, or bodily injury, infirmity or disease.” The amended act further contains a proviso to prevent its application “to any osteopath who holds a diploma from a legally chartered and regularly conducted school of osteopathy, in good standing as such, wherein the course of instruction requires at least four terms of five months each in four separate years, providing that such osteopath shall pass an examination satisfactory to the state board of medical registration and examination on the following subjects: anatomy, physiology, chemistry, and physical diagnosis. Provided that such osteopath shall not be granted the privilege of administering drugs nor of performing major or operative surgery.”
It seems quite clear that in its present form the statute affords no proper occasion for the application of the maxim of interpretation by which we were aided in State v. Liffring, supra. Careful comparison of the two acts with respect to their definitions of the practice regulated shows that while in the former the legislature intended to prohibit the administration of drugs by persons not informed as to their effect or potency, by the latter it has attempted a comprehensive regulation of the practice of the healing art; so far, at least, as to require the preparatory education of those who, for compensation, practice it according to any of its theories. The comprehensive language of the statute and the purpose which it clearly indicates require the conclusion that osteopathy is within the practice now regulated.
In support of the decision of the court of common pleas it is further contended that if the act includes *308 the practice of osteopathy it is to that extent void on constitutional grounds. From this point of view it is urged that the defendant has an established practice as an osteopathist, and that the statute is void because it contains no provision saving his vested right therein. This objection is founded on the inhibition of the fourteenth amendment to the constitution of the United States: “Nor shall any state deprive any person of life, liberty, or property without due process of law;, nor deny to any person within its jurisdiction the equal protection of the laws;” and the provision of our own bill of rights which gives inviolability to the rights of “enjoying and defending life and liberty, acquiring, possessing and protecting property, and seeking to obtain happiness and safety.” In urging this objection it is correctly assumed that there is a property interest in a vocation or means of livelihood, but the distinction between the right to establish a practice, and the right to pursue a practice already established seems to be inadmissible. By what process of reasoning could it be maintained that the right to enjoy property should be esteemed more sacred than the right to make contracts by which property might be acquired? The provision quoted from the bill of rights includes the right to acquire, and the right to possess within the same protection. Our constitutions are founded upon individualism and they make prominent the theory that to the individual should be granted all the rights consistent with public safety; and our development is chiefly attributable to the firm establishment and maintenance of those rights by an authorized resort to the courts for their protection against all hostile legislation which is not required by considerations of the public health or .safety. In the absence of such *309 considerations those rights are alike immutable; in' their presence they must alike yield. In this connection counsel for the defendant call our attention to The State of Ohio v. Gardner, 58 Ohio St., 599, a case which should not be referred to without approval. But it is there held that “where the pursuit concerns in a direct manner the public health and welfare, and is of such a character as to require a special course of study or training, or experience, to qualify one to pursue such occupation with safety to the public interests, it is within the competency of the genéral assembly to enact reasonable regulations to protect the public against evils which may result from incapacity and ignorance.”
In the enactment of legislation of this character the general assembly may take account of the advance of learning, and provide for the public health and safety by such reasonable and proper measures as increased knowledge may suggest; and, to make such legislation effective, one having an established practice, and one contemplating practicing, may be required to conform to the same standard of qualification. This conclusion seems to be justified by the considerations involved, as it is by the authority, of The State v. Gardner, supra, and Dent v. West Virginia, 129 U. S., 114.
It is further urged against the validity of the statute in its application to osteopathists that to their admission to practice it prescribes conditions with which compliance is impossible, and that it is therefore an attempt, by indirect means, to prohibit practice according to their theories. In this connection our attention is called to the provision of section 4403c, which, as to those contemplating practicing in other schools, requires that the applicant for a cer *310 tificate “shall be examined in materia medica and therapeutics, and the principles and practice of medicine of the school of medicine in which he desires to practice by a member or members of the board representing such school;” and to the fact that there is no member of the board representing the school of osteopathy. It could not be maintained, and we do not understand counsel to contend, that the board of medical examination must be so numerous a body that it may have a member of every existing or possible school. The insistence is that however few or numerous the members of the board may be, the act must contain practicable provisions for ascertaining the attainments of all who apply for certificates, they being in other respects qualified. Such provisions it is insisted are not contained either in that section or in the proviso of section 4403f, which relates especially to osteopathists, for it is there provided that an applicant shall hold “a diploma from a legally chartered and regularly conducted school of osteopathy in good standing as such, wherein the course of instruction requires at least four terms of five months each in four separate years,” and it is said that there is no school of osteopathy whose requirements exceed two years.
The question before us arises on demurrer to the indictment, and the record does not inform us of the fact that there is no school of osteopathy whose diploma would admit its holder to an examination. However well known it may be to those who have sought information concerning it, we are perhaps without such information as would justify us in regarding it as a fact to be considered in the case.
But a sufficient foundation for this criticism of the act appears in its provisions discriminating against *311 those who propose to practice in the school to which the defendant belongs. The proviso quoted contains a list of subjects upon which those desiring to practice are to be examined. Having in view the theories of the osteopathists as they are commonly understood, it seems clear that no adverse criticism could be made upon the discretion exercised in the requirement of these subjects for examination. They are much less numerous and extensive than those prescribed for applicants who contemplate a regular practice, and an appropriate limitation is placed upon the effect of certificates following such limited examination. But one who desires to practice in the regular school is admitted to a more extensive examination without any requirements as to duration of study in the college whose diploma he holds, and without any requirement in that regard, except that it shall be a “legally chartered medical institution in the United States in good standing at the time of issuing such diploma, as defined by the board.” Why the exaction of four years of study should be made of those only who are to take a shorter examination, and receive a certificate of limited effect, we need not inquire. It is quite obvious that this additional requirement could not have been made of those contemplating the practice of osteopathy because of the number and character of the subjects upon which they are to be examined, nor of the effect of their certificates, nor because of any consideration affecting the public health or safety which does not involve a scientific conclusion adverse to the efficacy of osteopathy. A conclusion of that character cannot be drawn by a body to which legislative power alone is given, and for whose members there is no prescribed qualification of education, knowledge or intelligence. *312 Authority to discriminate against osteopathy would imply authority to discriminate against any other school of medicine. It seems clear from the reasons involved, and from the discussion of the subject, and the points decided in The State v. Gardner, supra, that this discrimination against those who occupy the position of the defendant is unwarrantable, and that compliance with it can not be required.
The question lastly considered would dispose of the exception, but the other questions are in the record, and they have been ably discussed by counsel. It seemed proper to pass upon them to the end that the general assembly may not meet any unnecessary difficulty in the exercise of its ample power to protect the public health and welfare by providing that only the learned may pursue a learned profession whose activities so closely affect them.

Exception overruled.

Minshall, C. J., Williams, Bürkbt, Spbab, and Davis, JJ., concur.